17 Cal.3d 330 (1976)
551 P.2d 23
130 Cal. Rptr. 719
In re LEWIS CULBRETH on Habeas Corpus.
Docket No. Crim. 18699.
Supreme Court of California.
June 28, 1976.
*331 COUNSEL
Randy Sue Pollock, under appointment by the Supreme Court, for Petitioner.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Linda Ludlow, Deputy Attorneys General, for Respondent.
*332 OPINION
MOSK, J.
The petitioner was found guilty, after a jury trial, of two counts of second degree murder (Pen. Code, §§ 187, 189) and one count of voluntary manslaughter (Pen. Code, § 192, subd. 1). The jury also found that petitioner had been armed and had used a firearm, a rifle, in the commission of each of the offenses (Pen. Code, § 12022.5).
The trial judge sentenced petitioner to consecutive sentences on the two murder counts, and to a concurrent sentence on the manslaughter count. As to each count he declared in the judgment that a deadly weapon was used in the commission of the crime, thus purporting to apply the additional penalty presented in section 12022.5.[1]
At the outset we point out that section 12022.5 does not enumerate manslaughter as an offense which, if committed by use of a firearm, invokes an additional penalty. In a prior unpublished decision the Court of Appeal modified the judgment to provide that section 12022.5 does not apply to count 3, the manslaughter conviction.
(1a) We proceed, then, to the primary issue: whether section 12022.5 may be applied to both of the other offenses separately if, as the evidence reveals, there was a single course of conduct resulting in multiple victims.
The facts are relatively uncomplicated. On December 17, 1970, petitioner shot and killed his common-law wife, his mother-in-law, and his brother-in-law. The killings were accomplished with a .30-.30 rifle.
In the days prior to the killings events in the household had been stormy and all the parties bellicose. Petitioner had beaten his wife and *333 threatened to kill her. The evening before the offense petitioner's wife shot at him with a rifle while he was standing on the front lawn.
Petitioner testified in his own defense. He related that on the night of the killings, he and his wife had argued and she had kicked him. After that encounter, petitioner started to leave the house. As he opened the bedroom closet to find his jacket he heard his wife tell her mother to get a pistol because she intended to kill him. He heard the pistol being cocked. He saw his brother-in-law, cursing and threatening, coming toward him with a straight razor in his hand. Petitioner picked up his rifle. As he backed toward the front door, his brother-in-law shouted he was going to kill him. Petitioner fired. Petitioner remembered nothing further until he was outside the house. He did not deny shooting his wife and mother-in-law. The testimony indicated the shots were fired "real fast."
People v. Floyd (1969) 71 Cal.2d 879, 883 [80 Cal. Rptr. 22, 457 P.2d 862], held that inasmuch as being armed is an essential element of the crime of first degree robbery, section 12022, which provides for additional punishment when a person commits a felony while armed with a certain type of firearm, was inapplicable. In response thereto the Legislature later that same year enacted section 12022.5, which provides that "This section shall apply even in those cases where the use of a weapon is an element of the offense." (People v. Chambers (1972) 7 Cal.3d 666 [102 Cal. Rptr. 776, 498 P.2d 1024]; People v. McDaniels (1972) 25 Cal. App.3d 708 [102 Cal. Rptr. 444].) Thus section 12022.5 does not prescribe a new offense but merely additional punishment for an offense in which a firearm is used. (People v. Henry (1970) 14 Cal. App.3d 89, 92 [91 Cal. Rptr. 841].)
The legislative purpose of section 12022.5 has been described as deterrence, i.e., to deter the use of firearms on subsequent occasions. Thus it has been held that where there are consecutive robberies in several communities over a period of several hours, a defendant may not bootstrap himself into avoidance of additional penalties by claiming that the series of divisible acts, each of which had been committed with a separate identifiable intent and objective, composed an indivisible transaction. (People v. Massie (1967) 66 Cal.2d 899, 908 [59 Cal. Rptr. 733, 428 P.2d 869]; People v. Whittaker (1974) 41 Cal. App.3d 303, 310 [115 Cal. Rptr. 845].) But if all the charged offenses are incident to one objective and effectively comprise an indivisible transaction, then section 12022.5 may be invoked only once and not in accordance with the *334 number of victims. (People v. McFarland (1962) 58 Cal.2d 748, 760 et seq. [26 Cal. Rptr. 473, 376 P.2d 449].)
A series of Court of Appeal opinions has similarly interpreted the application of section 12022.5. People v. Johnson (1974) 38 Cal. App.3d 1, 12 [112 Cal. Rptr. 834], discussed the issue with clarity: "Usually section 654's prohibition against multiple sentences based upon a single criminal transaction will prevent judgments containing more than a single finding under section 12022.5. Multiple sentences were proper here only because there were multiple victims. This multiplicity of sentences did not engender multiplicity of weapon use. Each defendant indulged in a single `use' in the course of the liquor store holdup, thus evoking section 12022.5 but once.
(2) "The Attorney General's thesis, invoking three separate firearm penalties for a single occasion of firearm use, is inconsistent with the apparent objective of section 12022.5. A special deterrence against firearm use is its objective. The legislative theory is deterrence, whose power augments with each successive occasion. If the threat of a minimum five-year extension has failed to deter the first occasion of gun use, a second occasion may be deterred by doubling the threat, a third by tripling it. Thus the statute envisions a single application of deterrent force for each occasion, hopefully to deter gun use on a future occasion. Where, as here, a single judgment imposes sentences for several crimes committed upon a single occasion, only one finding under section 12022.5 is permissible."
In People v. Lowe (1975) 45 Cal. App.3d 792, 796 [119 Cal. Rptr. 699], a unanimous court declared: "The prohibition against multiple findings of use of a firearm applies where there is a single `use' in the commission of a crime against multiple victims." And in People v. Bush (1975) 50 Cal. App.3d 168, 178 [123 Cal. Rptr. 576], another unanimous court held: "It is the law that with respect to one `occasion' only one finding under section 12022.5 is permissible, regardless of the number of victims."
(1b) It is clear that the term "uses" was deliberately employed by the Legislature when it adopted section 12022.5. To "use" means, among other things, "`to carry out a purpose or action by means of,' to `make instrumental to an end or process,' and to `apply to advantage.'" (People v. Chambers, supra, 7 Cal.3d at p. 672.) The "end or process" here was the commission of a single frenetic act of violence which, unfortunately, resulted in multiple victims.
*335 Under the People's theory, no consideration of the facts is necessary; a body count of victims is sufficient to establish the number of separate transactions. This simplistic formula is untenable; an analysis of the events is essential to ascertain the apparent intent and objective of the defendant. Such an analysis here clearly indicates the homicides  the two second degree murders and the manslaughter  occurred in a matter of seconds, all part of a single melee. There was but one occasion, one intent, one objective, one indivisible transaction. Therefore section 12022.5 may be applied only once.
The judgment is modified to provide that petitioner shall serve only one additional period of imprisonment pursuant to Penal Code section 12022.5. Petitioner is not entitled to release, however, because he is held under a valid judgment of conviction. Accordingly, the order to show cause is discharged and the petition for writ of habeas corpus is denied.
Wright, C.J., Tobriner, J., and Sullivan, J., concurred.
CLARK, J.
I concur in denying the writ, but dissent from modifying the judgment. As a general rule, section 654 of the Penal Code prohibits multiple punishment when a single act or transaction is charged as multiple offenses. (In re Ward (1966) 64 Cal.2d 672, 675-676 [51 Cal. Rptr. 272, 414 P.2d 400]; Neal v. State of California (1960) 55 Cal.2d 11, 19-20 [9 Cal. Rptr. 607, 357 P.2d 839].) However, section 654 is inapplicable when the offenses arising from a single transaction are crimes of violence against multiple victims. (People v. Milan (1973) 9 Cal.3d 185, 197 [107 Cal. Rptr. 68, 507 P.2d 956]; People v. Ridley (1965) 63 Cal.2d 671, 678 [47 Cal. Rptr. 796, 408 P.2d 124]; Neal v. State of California, supra, 55 Cal.2d at pp. 20-21; see People v. Bauer (1969) 1 Cal.3d 368, 377-378 [82 Cal. Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].) Accordingly, as petitioner expressly concedes, section 654 is inapplicable to the underlying murder convictions here.
Section 12022.5 does not state an offense; it merely provides additional punishment for certain offenses in which a firearm is used. (People v. Strickland (1974) 11 Cal.3d 946, 961 [114 Cal. Rptr. 632, 523 P.2d 672]; People v. Provencher (1973) 33 Cal. App.3d 546, 549-550 [108 Cal. Rptr. 792]; People v. Henry (1970) 14 Cal. App.3d 89, 92 [91 Cal. Rptr. 841]; see In re Shull (1944) 23 Cal.2d 745, 749 [146 P.2d 417].) Therefore, section 654 is inapplicable to it.
*336 The court in People v. Johnson (1974) 38 Cal. App.3d 1, 11-12 [112 Cal. Rptr. 834], conceded that section 654 is inapplicable when the offenses arising from a single transaction are crimes of violence against multiple victims, but then brought section 654 in again through the back door by analyzing section 12022.5 in transactional terms. The language of the statute does not support such a construction.
Section 12022.5 speaks of "use" of a firearm, not "occasions" of firearm use. Neither "occasion" nor any synonym associated with transactional analysis appears in the statute. "`Use' means, among other things, `to carry out a purpose or action by means of,' to `make instrumental to an end or process,' and to `apply to advantage.' (Webster's New Internat. Dict. (3d ed. 1961).)" (People v. Chambers (1972) 7 Cal.3d 666, 672 [102 Cal. Rptr. 776, 498 P.2d 1024].) Under section 12022.5, the "purpose or action," "end or process" for which a firearm is used is the commission of one or more of the crimes specified therein. Accordingly, for the purposes of the section, petitioner used his firearm twice, committing two murders. By its terms the statute applies to "[a]ny person who uses a firearm in the commission of... murder...." Nothing in the statute indicates that it is applicable to one of petitioner's murders but not the other one.
Nor is the Johnson analysis supported by the fact that section 12022.5 is intended to deter use of a firearm in the commission of the offenses specified therein. The statutes directly sanctioning those crimes are also intended to have a deterrent effect. Nevertheless, a defendant committing two murders, e.g., on a "single occasion" may be convicted and punished for both of them. (People v. Milan, supra, 9 Cal.3d 185, 197.) So also may the punishment for each of the murders be enhanced under section 12022.5.
People v. Johnson, supra, 38 Cal. App.3d 1 should be disapproved insofar as it conflicts with the views expressed herein, as should the two cases uncritically following Johnson  People v. Lowe (1975) 45 Cal. App.3d 792 [119 Cal. Rptr. 699] and People v. Bush (1975) 50 Cal. App.3d 168 [123 Cal. Rptr. 576].
McComb, J., and Richardson, J., concurred.
Respondent's petition for a rehearing was denied July 28, 1976, and the opinion was modified to read as printed above. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.
NOTES
[1] Penal Code section 12022.5 provides, in relevant part, as follows: "Any person who uses a firearm in the commission or attempted commission of a robbery, assault with a deadly weapon, murder, assault with intent to commit murder, rape, burglary, or kidnapping, upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the state prison for a period of not less than five years. Such additional period of imprisonment shall commence upon expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence."