[Crim. No. 20694. First Dist., Div. Three. Jan. 23, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN FLORES III, Defendant and Appellant.

COUNSEL

Douglas R. Schmidt and Winslow & Schmidt for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Ronald E. Niver and John H. Sugiyama, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BARRY-DEAL, J.**—Juan Flores appeals from the judgment following his jury conviction on four counts of robbery (Pen. Code, § 211), with use of a deadly weapon in the commission of counts one and two (Pen. Code, § 12022, subd. (b)), and use of a firearm in counts three and four (Pen. Code, § 12022.5). Appellant was sentenced to an aggregate prison term of eight and two-thirds years.

Appellant contends that his conviction on four counts of robbery was improper when there was evidence of only two robberies and that sentencing errors were made. He further asserts that he was deprived of effective assistance of counsel and that instructional errors were committed.

## The Facts

Early on April 1, 1979, Marvin Givens, the assistant manager of the Jack in the Box restaurant on Willow Street in San Jose, was in his upstairs office, while Severa Salinas was serving customers. At about 5:45 a.m., someone started banging on a window, and Severa asked Marvin to come downstairs. On leaving his office, Marvin saw appellant with Severa. He was questioning appellant when appellant thrust forward and put a large knife to Marvin's stomach. Ordering Severa to stay where she was, appellant directed Marvin to open the cash register which he did. Appellant took about $50, and after making the two employees go into the office he disappeared.

At about the time that the robbery took place, John Foster was folding newspapers at a table outside the restaurant. John saw a man rush from the back of the establishment to a car, and heard the man yell twice, "Let's get the fuck out of here." John then observed the car pull quickly away from the restaurant.

On April 3, 1979, Nina Cawthorn and Roger Curnow were working at the Jack in the Box restaurant on Capitol Expressway in San Jose. About 1:30 a.m., appellant walked into the restaurant. Nina asked appellant if he wanted to be served, and he indicated that she should wait on the cars at the take-out window first. Nina turned her back to serve the people in the cars. When she turned around again, she noticed that appellant had left. No other customers were there when appellant returned about 20-45 minutes later. Nina asked if he was ready to be served. Without answering, appellant pulled out a pistol which he pointed at Nina; he demanded that the money from the cash register be placed in a bag. While Nina was putting the money in the bag, appellant pointed the pistol at Roger who was standing nearby and ordered him to lie on the floor. Roger complied. Appellant took the bag of money from Nina and left.

On April 9, 1979, Nina Cawthorn was again at work in the restaurant on Capitol Expressway. Appellant walked in, and Nina recognized him immediately. Going to the rear of the restaurant, Nina advised the manager that appellant was the one who had committed the robbery and asked that the police be called. Returning to the counter, Nina took the orders of appellant and an older man with him and tried to stall them. A police officer arrived and asked appellant to step outside.

On April 19, 1979, Detective Sergeant Richard Vizzussi of the San Jose Police Department showed a six-photograph lineup to several of the witnesses. Before actually showing the lineup, Vizzussi told each one to be impartial and not to feel obliged to identify anybody. Vizzussi also advised that a photograph of the robber was not necessarily included.

Marvin Givens selected number three which was a photograph of appellant and noted, "That's the guy. I am one hundred percent positive." Severa Salinas said number three, with the exception of the hair, looked the same. She further stated that number six looked somewhat similar, but ultimately she could not make a positive identification. John Foster pointed to number three and said, "This could be, but I am not sure." He observed that the hair and the build were the same. Roger Curnow selected numbers three and six; he felt that number six was closer. He also thought that number five had similar eyes.

Subsequently, while waiting for the preliminary examination to commence, a number of witnesses were in a hallway outside the courtroom where appellant was also present. Pointing to appellant, Severa Salinas told Sergeant Vizzussi that she was still unsure whether he was the robber. John Foster told Vizzussi that he was positive that appellant was the person he had seen at the restaurant; at the trial, however, he testified that he believed appellant looked like the person he had seen at the restaurant, but could not say for certain that appellant was the same person. Nina Cawthorn recognized appellant as soon as he entered the area. Roger Curnow also immediately identified appellant as the robber.

Appellant and two other witnesses testified for the defense. Kathy Kelly testified that in April 1979, she was a shift manager at the Capitol Expressway restaurant and recalled that appellant frequently came there. She recounted that appellant came in shortly after the robbery and that Nina Cawthorn had asked who he was. Kathy replied that he was a friend and a regular customer, and Nina said nothing about appellant being the robber.

Severa Salinas testified that appellant was not the person who robbed the Willow Street restaurant on April 1, 1979. She further testified that while she was waiting for the preliminary examination, several witnesses saw a person and said, "That's the guy." Severa looked around,

and when she saw only appellant, she explained to the witnesses that he was not the robber.

Appellant testified that he lived near the Capitol Expressway restaurant and was frequently there. He had never gone to the Willow Street restaurant, nor had he robbed it. Moreover, he never owned a revolver and never owned a large knife.

The jury found appellant guilty as charged on four counts of robbery. The court sentenced him to an aggregate prison term of eight and two-thirds years as follows:

| Charge | Offense | Enhancement |
| --- | --- | --- |
| Count three (April 3, Nina Cawthorn) | 3 years (midterm) | + 2 years |
| Count one (April 1, Marvin Givens) | 1 year* (1/3 of midterm) | |
| Count two (April 1, Severa Salinas) | 1 year* (1/3 of midterm) | |
| Count four (April 3, Roger Curnow) | 1 year* (1/3 of midterm) | + 2/3 year (1/3 of term) |

*Consecutive to count three.

### The Robbery Convictions.

■ Appellant contends that the evidence only supports his conviction of two counts of robbery, or in the alternative that section 654[1] proscribing multiple punishments for one criminal transaction prevents his consecutive sentencing for four counts of robbery.

Appellant is correct about the robbery counts. The crime of robbery includes elements of both theft and assault; theft occurs only when there is a taking from a victim having possession of the property (*Peo-*

---

[1]All code section references are to the Penal Code unless otherwise designated.

*ple* v. *Guerin* (1972) 22 Cal.App.3d 775 [99 Cal.Rptr. 573], cert. den. 409 U.S. 859 [34 L.Ed.2d 105, 93 S.Ct. 145]; *People* v. *Freeman* (1979) 95 Cal.App.3d 917 [157 Cal.Rptr. 454]). On April 1, at the Willow Street restaurant, appellant threatened Severa and forced Marvin to hand over the money from the cash register. On April 3, at the Capitol Expressway restaurant, appellant threatened Roger and forced Nina to hand over the cash in the register. Although appellant threatened all four of his victims, he committed an act of theft only against Marvin and Nina. Thus, his robbery convictions on counts two and four were improper.

The People agree with appellant's assertions, but incorrectly concede that the two convictions must be stricken. In *Guerin, supra,* the court modified the two improper robbery convictions to the lesser included offense of assault with a deadly weapon (§ 245, subd. (a)),[2] and subsequent cases have followed that procedure. (See, e.g., *People* v. *Higgins* (1972) 28 Cal.App.3d 771 [104 Cal.Rptr. 925].) In the case before us, the technical lack of the theft element for a robbery conviction is not sufficient basis to allow appellant to go unpunished for the assault of two of his victims. We reduce the convictions under counts two and four to assault with a deadly weapon.

■  Although multiple convictions are permissible, section 654 prohibits multiple punishment for offenses committed within one criminal transaction. (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal. Rptr. 654, 558 P.2d 552]; *People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].) The proper procedure is to stay the prohibited sentencing, with the stay becoming permanent upon completion of the imposed sentence. (Cal. Rules of Court, rule 449.)

An exception is created, however, where the single criminal transaction involves multiple victims. (*People* v. *Miller, supra,* at p. 885;

---

[2]At the time of the decision in *Guerin,* robbery was delineated by first and second degrees, and the court in *Guerin* found assault with a deadly weapon was an offense within the crime of robbery in the first degree. Subsequently, the same court retreated from that position, seemingly reopening the question of whether assault with a deadly weapon was necessarily a lesser included offense of first degree robbery. (*People* v. *Amin* (1978) 88 Cal.App.3d 637, 640 [152 Cal.Rptr. 9].) Degrees of robbery have since been eliminated, and assault with a deadly weapon is clearly not necessarily a lesser included offense. However, *People* v. *McGreen* (1980) 107 Cal.App.3d 504 [166 Cal.Rptr. 360] (opn. by Feinberg, J.), has recently held that where the robbery is charged, as in the instant case, with a "use" allegation, the crime necessarily encompasses assault with a deadly weapon.

*People* v. *Guerin, supra*, 22 Cal.App.3d at p. 780.) Punishment may be imposed for commission of a crime against each of the victims. In the instant case, in each of two criminal transactions appellant committed robbery against one victim and assault with a deadly weapon against the other victim. Therefore, appellant's section 654 challenge fails; he properly may be sentenced consecutively on all four counts.

■ Appellant was sentenced to one-third of the midterm for each of the convictions on counts two and four, i.e., one-third of three years, or one year. Although the upper term for robbery and assault with a deadly weapon are not the same, the midterms are—three years. Pursuant to section 1170.1, subdivision (a), "The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, ..." Thus appellant would be identically sentenced on the modified counts of assault with a deadly weapon and need not be remanded for resentencing on these counts.

*The Gun Use Enhancement on the Consecutive Sentence.*

■ Appellant next contends that the court improperly imposed two gun use enhancements for the convictions on counts three and four. The court imposed a two-year statutory enhancement (§ 12022.5) for violation of count three, and an additional two-thirds of a year for use of a gun under count four. Appellant raises two independent grounds for this challenge: the recent California Supreme Court decision in *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], and that court's decision in *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23].

*Harvey* held that the trial court erred in imposing an eight-month enhancement of a second count of robbery for a second firearm use allegation. Penal Code section 1170.1, subdivision (a), permits enhancement per section 12022.5 (firearm use) of a consecutive offense only for those offenses specifically listed in section 667.5. Despite the catch-all provision of section 667.5, subdivision (c)(8)—"Any felony in which the defendant uses a firearm which use has been charged and proved as provided in section 12022.5," the court found that to interpret that section to include all felonies committed with a firearm would render superfluous the itemization of "violent felonies" designated in section 667.5, subdivisions (c)(1)-(7). (*Harvey, supra*, 25 Cal.3d at p. 761.)

Thus the court concluded that robbery with a firearm use was not one of the enumerated offenses of section 667.5, and the added enhancement was improper. If armed robbery is not a specifically enumerated crime under section 667.5, subdivision (c)(8), neither is assault with a deadly weapon.

Legislative urgency enactment of Assembly Bill No. 2123, amending section 1170.1 effective May 29, 1980, followed in reaction to the *Harvey* decision. That statute specifically reincorporates subdivision (8) of section 667.5, subdivision (c), and states that, "This Act is intended to clarify and reemphasize what has been the legislative intent since July 1, 1977." This has raised retroactivity problems, vis-à-vis decisions not final prior to enactment of Assembly Bill No. 2123. *People v. Matthews* (1980) 108 Cal.App.3d 793, 796 [167 Cal.Rptr. 8] (hg. den.), has held that Assembly Bill No. 2123 cannot be interpreted as being retroactive; under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], the Supreme Court's interpretation of sections 1170.1 and 667.5 must be considered binding. *People v. Cuevas* (1980) 111 Cal.App.3d 189, 200 [168 Cal.Rptr. 519] arrived at the same result on the ground that to do otherwise would constitute a prohibited application of an ex post facto law.

We find the reasoning in *Matthews* and *Cuevas* persuasive; under *People v. Harvey,* 25 Cal.3d 754, *supra,* the improper enhancement must be stricken. We therefore do not consider appellant's contentions under *In re Culbreth, supra,* 17 Cal.3d 330.

As it has been determined that counts three and four involved only one criminal transaction, only one gun use enhancement should have been imposed and the eight-month enhancement for count four must be stricken.

*Statement of Reasons for Consecutive Sentences.*

■ Appellant claims that the court failed to state sufficient reasons for imposition of consecutive rather than concurrent sentences. Consecutive sentencing constitutes a "sentence choice" for which the court must articulate its reasons on the record. (§ 1170, subd. (c); Cal. Rules of Court, rules 405(f), 443; *People v. Walker* (1978) 83 Cal.App.3d 619 [148 Cal.Rptr. 66]; *People v. Anjell* (1979) 100 Cal.App.3d 189, 203 [160 Cal.Rptr. 669].)

The court stated the following reasons for imposing consecutive sentences: "First of all the crimes involve multiple victims; secondly, the defendant was armed with and he did use a knife in the commission of one of the Jack in the Box robberies and a firearm in the other. The crimes were committed at different times, at separate places, and do not constitute or indicate a single period of aberrant behavior. The defendant's convictions show, over a period of time, that they have become increasingly serious."

All of the criteria used by the court for imposition of consecutive sentences were proper with the possible exception of the dual use of the arming allegation (see Cal. Rules of Court, rules 421, 425). (Appellant's suggestion that the two robberies constituted one period of aberrant behavior (rule 425(a)(3)) is frivolous.) The court used the fact that appellant was armed with a firearm both to impose the statutory enhancement and to run the sentence for count four consecutively. As no enhancement was added for use of the knife in the April 1 robbery, the argument is not applicable to the consecutive sentencing on counts one and two.

The Legislature has determined that the same factor may not be used to justify both imposition of the upper term (aggravation) and to enhance. (§ 1170, subd. (b); Cal. Rules of Court, rule 441(c).) As the trial court did not impose the upper term as the base term, but rather the midterm of three years, that issue is not raised in this case. Rather, in light of recent case law determining that consecutive sentencing constitutes a form of enhancement (*People* v. *Lawson* (1980) 107 Cal.App.3d 748, 752 [165 Cal.Rptr. 764]), a matter of first impression is presented: may the same factor be used to impose two enhancements? In the instant case the trial court used the arming allegation to impose the statutory two-year enhancement and also to run the term for count four consecutively, which would constitute a second enhancement. This particular problem appears to have been addressed neither by statute nor decisional law.

Common sense leads to the conclusion that the Legislature, having expressed its concern with the dual use of facts both to aggravate and enhance, has expressed a policy equally applicable to dual use of the same fact to impose two enhancements. Further indication of this policy can be seen in the prohibition of Penal Code section 654 against multiple punishment for one criminal act.

Notwithstanding a prohibited dual use of the same fact for two enhancements, it is not reasonably probable that the trial court in this case would have sentenced appellant differently. (*People* v. *Dozier* (1979) 90 Cal.App.3d 174, 179 [153 Cal.Rptr. 53]; *People* v. *Martinez* (1980) 106 Cal.App.3d 524, 537 [165 Cal.Rptr. 160].) The trial court listed five reasons for its consecutive sentencing. All five were valid reasons for running counts one and two consecutively; four of them, the exception being use of a firearm, were valid reasons for running count four consecutively. In light of the multitude of valid factors considered by the trial court in its decision to impose consecutive sentences, it is not reasonably probable that in the absence of the invalid factor a different result would have occurred, and reversal is not required. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

## Sage Credits.

■ Appellant also contends that he is entitled to good-time/work-time credit for time spent in presentence custody. In light of *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], appellant may be entitled to good-time/work-time credit for presentence jail time served. It is unnecessary, however, to remand this case for resentencing. Pursuant to *Sage*, the Department of Corrections may be directed to compute the conduct credit administratively.

## Ineffective Assistance of Counsel.

Appellant claims that he was deprived of constitutionally adequate assistance of counsel in that 1) trial counsel failed to make a pretrial motion for a lineup, 2) failed to challenge the in-court identifications based on allegedly impermissibly suggestive photographic identification, 3) failed to move to dismiss the improper robbery counts, and 4) failed to object to the consecutive sentencing.

■ Appellant has the burden of establishing that "trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates," and that "counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859]; *People* v. *Nation* (1980) 26 Cal.3d 169, 178 [161 Cal.Rptr. 299, 604 P.2d 1051].)

■ 1) The case cited in his support by appellant, *Evans* v. *Superior Court* (1974) 11 Cal.3d 617 [114 Cal.Rptr. 121, 522 P.2d 681], holds only that the defendant has a right to a pretrial lineup if requested, and if "eyewitness identification is shown to be a material issue and there exists a reasonable likelihood of a mistaken identification which a lineup would tend to resolve." (*Id.* at p. 625.)

Respondent suggests a valid tactical consideration for counsel's failure to request a pretrial lineup. (See *People* v. *Pope, supra,* 23 Cal.3d at p. 425; *People* v. *Najera* (1972) 8 Cal.3d 504, 517 [105 Cal.Rptr. 345, 503 P.2d 1353].) Several of the witnesses had failed to make a positive identification of appellant when presented with the photographic lineup. Rather than tending to increase their lack of certainty, a corporeal lineup might well have resulted in a positive identification by the waivering witnesses of appellant as the robber. Thus, counsel's failure to request a pretrial lineup can reasonably be attributed to a choice of trial tactics, and not to incompetence.

■ 2) There is no evidence that the photographic identification, introduced into evidence at the trial, was impermissibly suggestive. Marvin Minor, a defense investigator, acknowledged awareness from the police report that the "six photographs [in the lineup] were very similar, the six individuals were very close alike in terms of their physical features." Roger Curnow believed that two of the photographs looked somewhat like the robber; Severa Salinas similarly could not make a positive identification beyond possibly two of the photographs. Every indication is that a motion challenging the photographic lineup would have been meritless.

■ The only ground on which to have challenged the in-court identification was the fact that several of the witnesses discussed identification of appellant as the robber while standing in the hallway prior to the preliminary hearing, and that this impermissibly tainted the validity of the in-court identification.

*People* v. *Nation, supra,* 26 Cal.3d 169, involved a pretrial identification of a mug shot by three young witnesses looking at the photographs together, and the resultant identification appeared to be a product of "mutual reinforcement of opinion" (see *Clemmons* v. *United States* (D.C.Cir. 1968) 408 F.2d 1230, 1241, 1245 and fn. 16). There was no in-court identification of the defendant by any witness, thus making the

sole issue the validity of the pretrial identification (*People v. Nation, supra*, at p. 179).

The evidence before us militates against "mutual reinforcement of opinion" by the witnesses. Severa Salinas testified that while waiting with several of the witnesses for the preliminary hearing to begin, some of them indicated appellant and said "That's the guy." Severa stated then, and continued to maintain on the stand that they were wrong and that appellant was not the robber. John Foster testified that no one pointed out appellant to him, that rather he recognized appellant as the robber and pointed him out to the others as "the person that did it." Nina Cawthorn had made a positive identification of appellant at the Capitol Expressway restaurant resulting in his arrest and testified that she again immediately recognized him at the preliminary hearing. Marvin Givens had previously made a positive identification of appellant from the photo mug shots. Roger Curnow testified that he immediately recognized appellant at the preliminary hearing. The only evidence of an attempt by the group to persuade a witness to change her opinion was Severa Salinas' testimony that the other witnesses had tried to convince her that appellant was the robber; she remained unconvinced.

Furthermore, unlike the situation in *Nation*, all of the witnesses made in-court identifications and appellant's counsel was given every opportunity to cross-examine them. Finally, the in-court identifications in this case were independently derived from the witnesses' face-to-face confrontations with appellant at the time of the robberies. Each of the witnesses had an opportunity to observe appellant for at least several minutes during commission of the robberies. (See *People v. Najera, supra*, 8 Cal.3d at p. 517.)

Counsel may well have perceived that an objection to the in-court identification would be fruitless and that his best defense lay with cross-examination of the witnesses' conflicting identification testimony. "In order to demonstrate that the alleged incompetency of his trial counsel in not objecting to the identification evidence denied him a potentially meritorious defense, the defendant must present a convincing argument that the pretrial identification procedure 'resulted in such unfairness that it infringed his right to due process of law.' [Citation.]" (*People v. Nation, supra*, 26 Cal.3d at p. 179.) Appellant has not carried his burden of establishing deprivation of a potentially meritorious defense.

3) The challenge to counsel's competence on the ground that no motion was made to dismiss two of the robbery convictions is mooted by our modification of the two counts to assault with a deadly weapon. Appellant has thereby not been deprived of a potentially meritorious defense.

4) Appellant offers nothing to substantiate his contention that counsel should have challenged the consecutive sentencing. Consecutive sentencing was justified on the facts of this case. Appellant has not met his burden of establishing that counsel "failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (*People v. Pope, supra*, 23 Cal.3d at p. 425.) The only evidence in the record is that counsel discussed sentencing with the trial court in chambers. Counsel was also no doubt aware of the many letters written on appellant's behalf which were in the file. If appellant wishes to challenge counsel's competence on evidence not in the record he should do so by a writ of habeas corpus. (*Id.,* at p. 426.)

### *Error in Instructions.*

██ Appellant maintains that CALJIC No. 2.22 is unconstitutional because it misleads the jury into believing that the People have the burden of producing evidence which is, taken in relation to the defendant's evidence, more convincing, and suggests to the jury that the burden of proof is a preponderance of the evidence as opposed to beyond a reasonable doubt.[3]

A constitutional challenge to this jury instruction was made and met in *People v. Salas* (1975) 51 Cal.App.3d 151 [123 Cal.Rptr. 903], which held that jury instructions must be read as a whole and must be regarded in light of all of the others. (*Id.,* at p. 156.) The reasoning in *Salas* is persuasive, and we find no error in the trial court's giving of CALJIC No. 2.22.

---

[3]CALJIC No. 2.22 provides: "You are not bound to decide in conformity with the testimony of a number of witnesses, which does not produce conviction in your mind, as against the testimony of a lesser number or other evidence, which appeals to your mind with more convincing force. This does not mean that you are at liberty to disregard the testimony of the greater number of witnesses merely from caprice or prejudice, or from a desire to favor one side as against the other. It does mean that you are not to decide an issue by the simple process of counting the number of witnesses who have testified on the opposing sides. It means that the final test is not in the relative number of witnesses, but in the relative convincing force of the evidence."

■ Appellant also maintains that it was prejudicial error for the trial court not to have given *sua sponte* a circumstantial evidence instruction in this case (CALJIC No. 2.01). This instruction need not be given where the prosecution does not rely substantially on circumstantial evidence. (*People* v. *Baldwin* (1979) 97 Cal.App.3d 396, 401 [159 Cal.Rptr. 15], mod. (1979) 98 Cal.App.3d 533a; *People* v. *Wiley* (1976) 18 Cal.3d 162, 174-175 [133 Cal.Rptr. 135, 554 P.2d 881]; *People* v. *Malbrough* (1961) 55 Cal.2d 249, 250-251 [10 Cal.Rptr. 632, 359 P.2d 30].) "[A] trial court is not required to instruct on the rules of law applicable to circumstantial evidence where the alleged circumstantial evidence is incidental to, and corroborative of, direct evidence." (*Malbrough, supra*, at pp. 250-251.) In this case, although some circumstantial evidence corroborated the prosecution's case, by appellant's own admission, "[I]dentification was not only a material issue in this case but, in fact, the only issue." That identification was achieved through the direct eyewitness testimony of the four victims. A circumstantial evidence instruction was not required.

The convictions for robbery under counts two and four are reduced to convictions for assault with a deadly weapon, the eight-month enhancement of count four is stricken, and as modified the judgment is affirmed. The Department of Corrections is directed to compute appellant's conduct credit administratively.

White, P. J., and Scott, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 16, 1981.