*1654 Opinion
WOODS (Fred), J.
A jury convicted appellant of kidnapping for robbery (Pen. Code,[1] § 209, subd. (b); count I), second degree robbery (§ 211; count II), attempting to dissuade a witness by threat of violence (§ 136.1, subd. (c)(1); count III), and evading a pursuing peace officer (Veh. Code, § 2800.2; count IV) and found firearm use allegations (§ 12022.5) true. Appellant then admitted felony conviction allegations (§§ 667, subd. (a), 667.5). Appellant was sentenced to state prison for life plus 18 years and 8 months.
Appellant contends the trial court erred (1) in answering a jury question without obtaining appellant’s personal waiver of his attorney’s presence (§ 1138) (2) in giving the standard reasonable doubt instruction (CALJIC No. 2.90) (3) in not staying the sentence on count III (§ 654) (4) in imposing two section 12022.5 enhancements and (5) in imposing both a section 667, subdivision (a) and a section 667.5 enhancement for a single felony conviction.
We find merit in only appellant’s last two contentions, modify the judgment accordingly, and as modified, affirm the judgment.
Factual Background
There being no insufficiency of evidence claim, we synopsize the facts. Our perspective favors the judgment. (People v. Barnes (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)
On August 23, 1991, appellant and at least two confederates kidnapped a truck driver and hijacked his tractor trailer loaded with eleven pallets of compact discs, audiotapes, and videotapes. During the two-hour kidnapping appellant looked at the victim’s driver’s license and said, “If you open your mouth we are going to kill you. I know where you live.” The victim, who had been handcuffed, was released unharmed, walked to a hospital, and reported the hijacking to the police.
On September 4, 1991, after a high-speed pursuit, appellant was arrested.
Discussion
1. Appellant contends the trial court erred in answering a jury question without obtaining his personal waiver of his attorney’s presence.
During deliberations the jury sent a question to the trial court.
*1655 Appellant acknowledges “[djefense counsel waived his presence, and the presence of defendant, for the answer to the . . . question.”
The record supports the acknowledgement: “The Court: People versus Nichols. The defendant is not present. Neither counsel is present, [f] They have both been informed regarding the question and the suggested answer, and both counsel waive their presence and the defendant’s presence as well.”
Nevertheless, appellant contends he was not asked to and did not waive his right to have counsel present[2] when the trial court answered the jury’s question. From this foundation appellant constructs the following bridge to prejudice. Appellant states: “In this case, since counsel was absent during the instruction, there is no guarantee appellant was not prejudiced. The answer provided the jury, which is unknown because unrecorded, ‘may have affected substantial rights of appellant.’ (Cite.) For instance, the court may have provided an answer which directed the jury to return a guilty verdict on the count 1 charge.” (Italics added.)
Appellant is mistaken. As we have indicated, the trial court informed the jury in open court that counsel had been informed of their question “and the suggested answer” and that counsel had waived their presence, and the defendant’s presence. The reporter’s transcript then reflects the following:
“The Court: . . . Mrs. Wilson, you are the foreperson?
“Juror Wilson: Yes, Your honor.
“The Court: I received the following question. ‘Can the defendant be found guilty of kidnapping by force without the use of the firearm? The answer is yes. [j[] Does that answer the question?

“(The jurors answered collectively in the affirmative.)

“The Court: Go back and continue deliberations. Thank you.” (Italics added.)
The record, clear and unequivocal, refutes appellant’s conjecture that the trial court may have “directed the jury to return a guilty verdict.”
Before answering the jury’s question the trial court notified counsel. The trial court also informed counsel of the “suggested answer.” Whether counsel was present or absent the simple and correct “yes” answer would have *1656 been the same. Therefore, either because there was no error {People v. Lang (1989) 49 Cal.3d 991, 1028 [264 Cal.Rptr. 386, 782 P.2d 627]; People v. Bloyd (1987) 43 Cal.3d 333, 358-361 [233 Cal.Rptr. 368, 729 P.2d 802]) or because any error was harmless {People v. Douglas (1990) 50 Cal.3d 468, 517-518 [268 Cal.Rptr. 126, 788 P.2d 640]; People v. Hovey (1988) 44 Cal.3d 543, 585 [244 Cal.Rptr. 121, 749 P.2d 776]; People v. Chagolla (1983) 144 Cal.App.3d 422, 430-433 [193 Cal.Rptr. 711]; People v. Conrad (1973) 31 Cal.App.3d 308, 323-324 [107 Cal.Rptr. 421]), appellant’s contention is without merit.
2. Appellant contends the trial court erred in giving the standard reasonable doubt instruction (CALJIC No. 2.90).
After appellant filed his opening brief the United States Supreme Court decided Victor v. Nebraska (1994) 511 U.S. _ [127 L.Ed.2d 583, 114 S.Ct. 1239] which upheld CALJIC No. 2.90. Appellant’s contention is not well taken.
3. Appellant contends the trial court erred in not staying the sentence on count III (§ 654).
Appellant argues he cannot be punished both for kidnapping the victim (§ 209, subd. (b); count I) and threatening to kill him if he “open[ed] [his] mouth” (§ 136.1, subd. (c)(1); count III) because the crimes “were part of an indivisible course of conduct with one intent and objective” (§ 654; Neal v. State of California (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839]). We disagree.
In declining to overrule Neal our Supreme Court noted:
“Decisions since Neal have limited the rule’s application in various ways. Some have narrowly interpreted the length of time the defendant had a specific objective, and thereby found similar but consecutive objectives permitting multiple punishment. (E.g., People v. Harrison [(1989)] 48 Cal.3d [321] at pp. 334-338 [256 Cal.Rptr. 401, 768 P.2d 1078] [multiple sex crimes each have the separate objective of achieving additional sexual gratification]; People v. Perez [(1979)] 23 Cal.3d [545] at pp. 551-554 [153 Cal.Rptr. 40, 591 P.2d 63] [similar]; People v. Trotter (1992) 7 Cal.App.4th 363, 368 [8 Cal.Rptr.2d 648] [‘each shot [fired at the same victim] evinced a separate intent to do violence’].)
“Other cases have found separate, although sometimes simultaneous, objectives under the facts. (E.g., People v. Coleman (1989) 48 Cal.3d 112, *1657 162 [255 Cal.Rptr. 813, 768 P.2d 32] [assault of robbery victim had separate intent and objective than the robbery]; People v. Nguyen (1988) 204 Cal.App.3d 181, 189-193, 196 [251 Cal.Rptr. 40] [harming of unresisting robbery victim a separate objective from the robbery itself]; People v. Booth (1988) 201 Cal.App.3d 1499, 1502 [248 Cal.Rptr. 64] [‘dual objectives of rape and theft when entering the victims’ residences’ supported separate punishment for burglaries and rapes]; People v. Porter (1987) 194 Cal.App.3d 34, 37-39 [239 Cal.Rptr. 269] [robbery and kidnapping the same victim for a later, additional, robbery had separate objectives].) Additionally, even Neal itself made clear that crimes of violence against multiple victims were separately punishable. {Neal, supra, 55 Cal.2d at pp. 20-21.)
“These examples, which are not exhaustive, have helped mitigate the concerns regarding the Neal test in specific situations. . . .” {People v. Latimer (1993) 5 Cal.4th 1203, 1211-1212 [23 Cal.Rptr.2d 144, 858 P.2d 611].)
Latimer also observed: “We also stress that nothing we say in this opinion is intended to cast doubt on any of the later judicial limitations of the Neal rule. For example, we do not intend to question the validity of decisions finding consecutive, and therefore separate, intents, and those finding different, if simultaneous, intents. . . . Multiple punishment in those cases remains appropriate.” (5 Cal.4th at p. 1216.)
Appellate counsel characterizes appellant’s “entry into the truck, his movement of the truck, and his threat to [the victim] not to divulge facts concerning the robbery” as “a course of conduct with but one intent to deprive [the victim] of the truck so that appellant could sell the musical recordings.” This is not how appellant characterized his own conduct. Appellant testified he was merely buying stolen property from a willing thief, the victim truck driver.
The jury disbelieved appellant’s version and the trial court rejected the version now suggested by appellate counsel.
“The question of whether the acts of which defendant has been convicted constitute an indivisible course of conduct is primarily a factual determination, made by the trial court on the basis of its findings concerning the defendant’s intent and objective in committing the acts. This determination will not be reversed on appeal unless unsupported by the evidence presented at trial.” {People v. Lee (1980) 110 Cal.App.3d 774, 786 [168 Cal.Rptr. 231].)
We find substantial evidence that appellant had two separate objectives: (1) to hijack the truck by kidnapping and robbing the victim and (2) to avoid detection and conviction by dissuading and intimidating the victim.
*1658 The first objective was accomplished in two hours. The second was ongoing. It was initially successful when the victim, fearing for his life, falsely told the police he had been blindfolded and could not identify any of the kidnappers.
The means of achieving each objective was also different. A shotgun pressed against the victim’s stomach achieved the first. Looking at the victim’s driver’s license, reading aloud his address, and threatening future harm achieved the second.
Appellant was properly sentenced on both counts I and III.
4. Appellant contends the trial court erred in imposing two section 12022.5 enhancements.
The trial court imposed gun use enhancements (§ 12022.5) in connection with both counts I and III. Appellant contends it was error to do so. We agree.
Section 12022.5 provides that “any person who personally uses a firearm in the commission . . . of a felony” shall be punished by an additional term of imprisonment. But In re Culbreth (1976) 17 Cal.3d 330, 333 [130 Cal.Rptr. 719, 551 P.2d 23] “held that even if there are multiple counts involving multiple victims of violent crime, the enhancement may be imposed only once ‘if all the charged offenses are incident to one objective and effectively comprise an indivisible transaction.’ ” (People v. King (1993) 5 Cal.4th 59, 63 [19 Cal.Rptr.2d 233, 851 P.2d 27].)
Although People v. King overruled Culbreth (17 Cal.3d at p. 79), it did so only prospectively. Culbreth applies to the instant case.
Applying Culbreth to our facts is not without difficulty. “[A]ppellate courts (and undoubtedly trial courts) have found it very difficult, if not impossible, to consistently implement the rule.” (People v. King, supra, 5 Cal.4th at p. 77.) Notwithstanding substantial evidence appellant harbored two separate intents or objectives for purposes of section 654, appellant had continuous possession of the shotgun during the two-hour commission of counts I and III, there was but one victim, and the commission of count III occurred during the indivisible kidnap-robbery transaction. We conclude, within the meaning of section 12022.5 as construed by Culbreth, there was but one personal firearm use.
*1659 5. Appellant contends the trial court erred in imposing both a section 667, subdivision (a) and a section 667.5 enhancement for a single felony conviction.
Respondent concedes “that the trial court erred in imposing two separate enhancements based on a single prior conviction for voluntary manslaughter: a five-year enhancement pursuant to section 667(a), and a one-year enhancement pursuant to section 667.5(b).” The concession is appropriate. (People v. Jones (1993) 5 Cal.4th 1142 [22 Cal.Rptr.2d 753, 857 P.2d 1163].)[3]
Disposition
The abstract of judgment is ordered corrected by indicating that the count III enhancement has been stayed (“S”) for a total of “0” years, by striking the section 667.5, subdivision (b) enhancement, and by correcting tide “Total term imposed” entry on page 1, line 8 to read “9 years, 8 months.” A corrected abstract of judgment shall be sent to the Department of Corrections.
As corrected, the judgment is affirmed.
Lillie, P. J., and Johnson, J., concurred.
Appellant’s petition for review by the Supreme Court was denied February 1, 1995.

 Statutory references, unless otherwise noted, are to the Penal Code.

 Appellant makes no claim concerning his own absence.

 In his pro se brief appellant argues the trial court erred in imposing sentences on both counts I (§ 209) and II (§ 211). Appellant is mistaken. Because the count II sentence was stayed there was no violation of section 654.