Filed 2/23/15  P. v. Olivas CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LUIS ROBERTO OLIVAS,<br><br>    Defendant and Appellant. | B253080<br><br>(Los Angeles County<br>Super. Ct. No. VA127854) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Higa, Judge.  Affirmed.

        Kenneth J. Sargoy, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Luis Roberto Olivas appeals from a judgment which sentences him to 33 years in prison for, among other things, carjacking and robbery. He contends there is insufficient evidence to support his conviction and he received ineffective assistance of counsel. He also contends the trial court's dual use of facts resulted in sentencing error. We affirm the judgment.

## FACTS

In an information dated May 7, 2013, Olivas was charged with second degree robbery of Alex Albarran (count 1), carjacking a vehicle in the possession of Mariana M. (count 2), second degree robbery of Mariano Herrera (count 3), and possession of a firearm by a felon (count 4). (Pen. Code, §§ 211, 215, subd. (a), 29800, subd. (a)(1).)[1] It was further alleged as to the first three counts that Olivas personally used a firearm, a handgun, within the meaning of section 12022.53, subdivision (b), causing the above offense to become a serious felony pursuant to section 1192.7, subdivision (c)(8) and a violent felony within the meaning of section 667.5, subdivision (c)(8). It was alleged as to all counts that Olivas had suffered one prior strike, one prior serious felony conviction and had served a prior prison term. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667, subd. (a)(1), and 667.5, subd. (b).)

### I. Facts Underlying Count 1 for Second Degree Robbery

On November 18, 2012, Alex Albarran was robbed while walking home in the city of Bell Gardens at approximately 2:30 a.m. Albarran described the person who robbed him as a 20- to 25-year old man who was five feet 11 inches tall and about 200 pounds. The man crossed the street and stood one or two feet away from Albarran when he pulled out a handgun and asked Albarran for his "stuff." Albarran gave him his wallet and phone. Bell Gardens Police Officer John Acosta responded to Albarran's call. Based on Albarran's description, Officer Acosta directed Officer Victor Arana to create a six-pack photographic lineup of a male Hispanic, 20 to 25 years old with a mustache, wearing a

---

[1] All further section references are to the Penal Code unless otherwise specified.

gray hooded sweater. Albarran viewed the six-pack that night. The lineup did not include a photograph of Olivas. Instead, it included a picture of Miguel Ibarra, who had been seen wearing a gray hooded sweater a few hours before the robbery. Although Albarran believed Ibarra "looked like" the perpetrator, he failed to identify anyone from the lineup. Albarran identified Olivas as the perpetrator in a different photographic lineup a week later. He also identified him at trial.

## II. Facts Underlying Counts 2 for Carjacking and 3 for Second Degree Robbery

On November 25, 2012, Mariana M. and Mariano Herrera were sitting in a parked car in the city of Bell Gardens at about 5:30 a.m. when someone bumped into the car with his bicycle. Mariana M. rolled down her window to ask if he was okay. He confirmed he was fine and engaged them in conversation. Mariana M. and Herrera noticed he was smoking a long brown cigarette with a tip made out of plastic. At some point during the conversation, the man asked Mariana M. if she would give him a ride to buy marijuana. When she refused, he pointed a silver handgun in her face and demanded she and Herrera get out of the car and leave their belongings behind. When they complied, the man ordered Herrera to give him his wallet and ordered Mariana M. to lift up her shirt and bra to make sure she did not have any money hidden there. He then drove off in the car.

Officer Acosta also responded to Mariana M. and Herrera's 911 call. Mariana M. described the suspect as 25 to 35 years old, five feet seven or eight inches tall, about 165 to 175 pounds and wearing a hoodie or beanie. Herrera described the suspect as 25 to 30 years old, five feet seven or eight inches tall, about 175 to 200 pounds and wearing a hoodie. Based on these descriptions, Officer Arana created two six-pack photographic lineups. The first one, shown on the day of the carjacking, included a picture of Ibarra and the second one, shown some days later, included a picture of Olivas. Both Mariana M. and Herrera identified Olivas as the assailant. They also directed Officer Acosta to the cigarette they saw the suspect smoking. It was the only brown cigarette on the ground in the area with a plastic tip. The cigarette contained DNA from two contributors, one of whom was Olivas.

3

Officer Arana discovered Mariana M.'s car later that day in an area where other stolen vehicles had been recovered. Officer Arana stayed in the area to see whether anyone would try to move the vehicle. During his surveillance, he noticed Olivas walking out of the area wearing a gray hooded sweater. Olivas was arrested that day.

## III.  Trial and Sentencing

A jury trial began on November 5, 2013. The prosecution presented evidence of the crimes as described above. The jury found Olivas guilty of the crimes against Mariana M. and Herrera (counts 2 and 3) and of possession of a firearm by a felon (count 4). It further found true the firearm enhancement allegations with respect to counts 2 and 3. The jury failed to reach a unanimous decision on the robbery of Albarran (count 1). The trial court declared a mistrial on that count and it was dismissed. In a bifurcated proceeding, the trial court found the prior conviction and prison term allegations to be true.

Using count 2 as the base count, the trial court imposed the upper term of nine years, doubled to 18 years under the Three Strikes law, plus 10 years for the firearm enhancement, plus five years for the prior conviction allegation for a total term of 33 years in state prison. Concurrent sentences of three years on count 3 and two years on count 4 were also imposed. Olivas timely appealed.

## DISCUSSION

Olivas challenges the judgment on the grounds of insufficient evidence, ineffective assistance of counsel and sentencing error. None of these grounds merit reversal.

## I.  Insufficient Evidence

Olivas argues his conviction was not supported by substantial evidence because the eyewitness identification was unreliable. We disagree.

The scope of our review for sufficient evidence supporting a conviction is a very narrow one. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We will not disturb the trier of fact's determination of the credibility of witnesses and the truth or falsity of the facts on which that determination depends. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

4

Instead, we review the entire record in the light most favorable to the verdict and determine whether there is evidence that is reasonable, credible, and of solid value such that a reasonable juror could find the defendant guilty beyond a reasonable doubt. (*People v. Davis* (1995) 10 Cal.4th 463, 509.)

Reviewing the record under this standard, we find ample evidence to support Olivas' conviction. Both Mariana M. and Herrera identified Olivas from the six-pack and at trial. These two eyewitness identifications alone constitute substantial evidence to support the convictions. It is well settled that a single eyewitness's identification of the defendant as the perpetrator may be sufficient to sustain a conviction. (*People v. Boyer* (2006) 38 Cal.4th 412, 480; see also Evid. Code, § 411 ["[e]xcept where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact"]; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction"].)

Under the circumstances, we are not persuaded by Olivas' argument that these identifications were so unreliable as to warrant reversal. The jury heard the evidence, and was fully aware of the factors to which Olivas now points in his attempt to discredit the identifications. Defense counsel noted in closing that the primary issue in this case was whether Olivas was correctly identified as the perpetrator. She exhaustively described all of the problems associated with the eyewitness identification in this case. In addition, the trial court instructed the jury on the factors to consider in weighing eyewitness testimony. When the factors affecting an identification are explored at trial and where an eyewitness identification is believed by the trier of fact, the identification will be accepted on appeal as supported by substantial evidence. (*People v. Robertson* (1989) 48 Cal.3d 18, 44 [contradictions or other weakness in the witnesses' testimony "are matters to be explored on cross-examination and argued to the trier of fact"].) In any case, Mariana M. and Herrera's identifications were not the sole evidence supporting Olivas' conviction. Olivas' DNA was on the cigarette found near the car and Olivas was seen coming out of the area where Mariana M.'s stolen car was parked.

5

## II.    Ineffective Assistance of Counsel

Olivas next challenges the effectiveness of his trial counsel, arguing she should have brought a motion in limine to keep the DNA evidence from being heard by the jury. According to Olivas, the DNA evidence was unduly prejudicial to his case, subsuming any contrary evidence that would tend to prove his innocence, including that there was one other DNA contributor to the cigarette, that the cigarette was there because Olivas lived around the corner, and that there was no way to determine the date or time the DNA was deposited on the cigarette.  We are not persuaded.  Olivas fails to show, on this record, that trial counsel rendered ineffective assistance in failing to move to suppress the DNA evidence.

"In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.  [Citations.]  A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.  Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel.  [Citations.]  If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation.  [Citation.]  Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus.  [Citation.]"  (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.)

Olivas falls far short of meeting this standard.  He admits "the record sheds no light on the reason or reasons trial counsel failed to move in limine to exclude evidence of the tobacco product found 'around the corner' from appellant's home, and trial counsel was not asked why she did not move to exclude the evidence."   Moreover, contrary to Olivas' contention, there is a satisfactory explanation for his trial counsel's failure to

6

move to suppress the DNA evidence -- it was meritless. Mariana M. and Herrera observed the perpetrator smoking a brown cigarette with a plastic tip when they were talking to him. They pointed the cigarette out to the police. It was located in the area where the perpetrator had been standing and it looked like the cigarette he had been smoking. Both testified there no other similar looking cigarettes in that area. The DNA evidence was relevant to prove the identity of the perpetrator and admissible.

Olivas provides no basis to exclude the evidence except to argue the evidence was "overwhelmingly prejudicial" and should be excluded under Evidence Code section 352 because "[n]ot only was the DNA on the tobacco product found 'around the corner' from appellant's home, it had unknown DNA on it that could not be explained by the prosecution's expert, criminologist Krokaugger." This is not the type of prejudice which warrants exclusion of evidence. "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." (*People v. Karis* (1988) 46 Cal.3d 612, 638.) "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" (*People v. Farmer* (1989) 47 Cal.3d 888, 912, overruled on other ground by *People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6.) No such prejudice resulted from the admission of the DNA evidence. Olivas' claim of ineffective assistance of counsel must be rejected.

## III.    Sentencing Error

Olivas contends the trial court violated the prohibition against dual use of facts in sentencing because it considered the use of a gun as both an aggravating factor in imposing the upper term on count 2 as well as for the personal gun use enhancement.[2] A sentencing court "may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b).) Thus,

---

[2]    Section 12022.53, subdivision (b) provides a sentencing enhancement of 10 years for any person who personally uses a firearm in the commission of certain specified felonies, including under section 215 for carjacking.

a fact charged and found as an enhancement may be used to impose the upper term only if the sentencing court has and exercises its discretion to strike the punishment for the enhancement. (Cal. Rules of Court, rule 4.420(c).)

At sentencing, the trial court heard argument from counsel regarding whether to impose the upper or lower terms. Defense counsel requested the low or midterm, arguing,

> "I do not believe that circumstance two, the manner in which the crime was carried out indicates planning, sophistication or professionalism. I do not believe that that's an appropriate aggravating factor in this particular case. There was nothing sophisticated about it based on the way the evidence came out. There was nothing professional about it. Really no planning about it.
>
> "With regards to factor that's noted in number one, although a gun is used, it doesn't appear that it really was of such great violence or great bodily harm or even threat to great bodily harm. Yes, a gun was used. Guns are used in crimes that guns are alleged, but to say just because a gun was used that it involved great violence I don't believe is sufficient to make it a circumstance in aggravation.
>
> "With regards to the factor the defendant was engaged in violent conduct which indicates a serious danger to society, it seems to me that there's nothing necessarily that shows that this was extremely violent, and I'm not quite sure how that factor applies in this case because the charge itself is a violent charge. Yes, he does have a prior for attempted robbery, but there's no indication that any weapon was allegedly used in that."

The prosecutor requested the upper term as well as consecutive sentences due to Olivas' prior conviction for attempted robbery and his use of the firearm to force Mariana M. to lift up her shirt and expose her breasts.

The trial court ruled, "On count 2, I select the high term which is nine years because of the factors in aggravation which are, one, the crime involved the threat of

8

great bodily harm especially when you take a gun and stick it up in somebody's face and then take their property. [¶] Also this was a violent conduct. I think you take a gun and you rob someone, that is violent conduct, and it's a serious danger to society at least to the two people you're facing and also the factors that you were on parole. You were just paroled from prison on attempted robbery charge in 2012, and then you commit this offense and use guns. [¶] So I think that's a factor in aggravation also. So I select the high term which is nine years, and consecutive to that will be the five-year prior, the prior robbery, attempted robbery. That's an additional five years . . . [¶] And for the use of that firearm in this robbery, that's an additional ten years."

The Attorney General contends Olivas' argument is not cognizable on appeal because he failed to object on this ground at the time of sentencing. (See *People v. Scott* (1994) 9 Cal.4th 331, 355 [defendant's claim that reasons used for sentencing were "inapplicable, duplicative, and improperly weighed" was forfeited].)

We need not reach this issue because the sentence was proper. We first point out that judges no longer find facts in support of their sentencing decisions. Instead, to comport with constitutional principles embodied by the Sixth Amendment, the legislature amended California's Determinate Sentencing Law to give judges discretion to choose the appropriate sentence based on *a statement of reasons* justifying the sentence. (§ 1170, subd. (b).) Thus, it has been recognized that the prohibition on "dual use of facts" may no longer be viable. (Cal. Rules of Court, rule 4.420, Advisory Committee Comment.)

Even if the prohibition is still in play, the trial court identified aggravating factors other than the gun use, including that Olivas had "just paroled from prison on [an] attempted robbery charge in 2012" and committed a violent crime which involved the threat of great bodily harm. Even if we accept Olivas' argument that the violence, danger, and threat associated with the crimes involved his use of a gun, Olivas' parole status is separate and apart from the gun use. That alone is sufficient to impose an aggravated prison term under the determinate sentencing law. (*People v. Castellano* (1983) 140 Cal.App.3d 608, 614-615 [single aggravating factor sufficient to impose

9

upper term].)  "Improper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if '[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error.' "  (*People v. Coleman* (1989) 48 Cal.3d 112, 166.)  It is readily apparent, from the trial court's comments, that it intended to impose the maximum sentence; the factors it identified and that are shown by the record permitted it to do so without running afoul of the dual use prohibition.  (See *People v. Avalos* (1984) 37 Cal.3d 216, 233; *People v. Flores* (1981) 115 Cal.App.3d 67, 79-80.)

## DISPOSITION

The judgment is affirmed.


                                               BIGELOW, P.J.

We concur:


                RUBIN, J.


                GRIMES, J.