[No. E013948. Fourth Dist., Div. Two. Dec. 21, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
BRUCE CRAIG DAVIS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A through II.D.

**COUNSEL**

Quin Denvir, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and Niki Cox Shaffer, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHLI, J.**—A jury convicted appellant of one count of robbery (Pen. Code, § 211)[1] (count 1) and one count of attempted murder (§§ 187, subd. (a), 664) (count 2). With respect to the robbery count, an allegation that appellant personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)) was found to be true. With respect to the attempted murder count, allegations that appellant personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)), discharged a firearm at an occupied motor vehicle which caused great bodily injury to another (§ 12022.5, subd. (b)(1)), and personally inflicted great bodily injury (§ 12022.7) were found to be true. The jury also found the attempted murder was willful, deliberate and premeditated.

On count 1, the court sentenced appellant to the upper term of five years and a consecutive middle term of four years for use of a firearm. On count 2, the court sentenced appellant to life with the possibility of parole and a consecutive term of five years under section 12022.5, subdivision (b)(1), for inflicting great bodily injury by firing at an occupied motor vehicle. The life sentence and five-year enhancement on count 2 were imposed concurrently with the sentence and enhancement on count 1. Enhancements for use of a firearm and personal infliction of great bodily injury under section 12022.7 on count 2 were stayed.

Appellant contends (1) the court erred in not ordering a pretrial lineup; (2) appellant's motion for a new trial on the ground of newly discovered evidence should have been granted; (3) the court erred in instructing the jury on implied malice with respect to the attempted murder count; (4) the evidence was insufficient to establish the attempted murder was deliberate and premeditated; and (5) the court could not impose both the enhancement for use of a firearm on count 1 and the enhancement for causing great bodily

[1]All statutory references are to the Penal Code.

injury by shooting at an occupied motor vehicle on count 2. In the published portion of this opinion we reject appellant's challenge to the multiple sentence enhancements. In the remaining portion we reject appellant's other contentions. We therefore affirm.

## I.

### FACTS

About 9:20 or 9:30 on the evening of April 4, 1993, Louie Esparza and his brother Fernando were driving in their brother-in-law's pickup truck to buy beer for a party. Louie was driving and Fernando was sitting in the passenger's seat. They passed a liquor store and decided to go there. Louie turned into a driveway to turn around. As he entered the driveway, a young Black man approached and said, "Give me your money." Louie looked at Fernando and then turned back and saw an automatic handgun pointed in his face. A different Black man, later identified by Louie as appellant, was holding the weapon. Louie had no difficulty seeing either man at the truck window.

Louie gave one 10-dollar bill and two 5-dollar bills to the first man, who handed them to appellant. Appellant then said, "Turn off the car, get the fuck out, or I'll blow your mother fuckin' brains out." Louie hesitated, turned slowly and then stepped on the gas, trying to accelerate away. The brothers heard a gunshot and then another. Fernando said, "I'm shot, I'm hurt," and held his side, which was bleeding. Louie drove to the hospital.

At the hospital, Louie gave the police a description of the men who had robbed him. He said the gunman was a Black male, about five feet nine inches and one hundred sixty pounds, wearing blue Levis and a white T-shirt or a shirt with a white collar. He also said the gunman wore a black jacket. The description was broadcast and was heard by Officer Rodney Topping, who was on patrol. Topping proceeded to the vicinity of the robbery and saw appellant and several other Black males in front of a liquor store. Upon seeing Topping, appellant ran through an alley. Topping pursued appellant, identifying himself and ordering appellant to halt. Appellant continued to run.

Topping caught up with appellant. While Topping was attempting to handcuff appellant, the two scuffled. Topping handcuffed appellant and retrieved from appellant's pocket a 10-dollar bill and two 5-dollar bills, folded together, and four 20-dollar bills and one 5-dollar bill, separately folded together. Appellant was wearing dark blue jeans, a black jacket, and probably a black T-shirt.

At the hospital, a police officer told Louie Esparza a suspect had been caught and wanted to see if Louie could identify him. The officer said, "I can't tell you if that's the guy or not. You're the one, you're gonna have to tell us if that's him." Louie said, "If I was to see him right now, I could identify no problem."

About 10:33 p.m., the officer took Louie to the vicinity of the robbery. On the way, the officer read Louie an in-field lineup admonishment which said: "We are detaining a person who may or may not have committed the crime. You are under no obligation to identify anyone. If there are any similarities between the person detained and the person who committed the crime, please tell me about them. Please advise me whether or not this person is the person who committed the crime."

Before the officer stopped the car, when the car was about 20 feet away from appellant, Louie said "That's him. That's the shooter." The officer asked, "Are you sure that's him?" Louie responded, "I'm sure that's him. You don't even have to get any closer. I know that's him." Louie had no difficulty in recognizing appellant. He also identified appellant later at the preliminary hearing and at trial. Louie testified at trial, "There's no doubt in my mind. I see him in my sleep."

The day after the shooting, a .22-caliber shell casing was found in the truck. The wound to Fernando was consistent with a .22-caliber bullet. The bullet ricocheted eight times inside his body and could not be removed. Fernando required surgery for four hours and hospitalization for seven days.

Appellant's defense was alibi. Appellant and his mother testified that on the evening of April 4, 1993, his mother gave him $15 to return to a friend named Billy. Appellant testified that he also had $110 of his own. He went to Billy's house at 21st Street and Harrington, but Billy was not there. On his way home appellant met some friends and was with them when Officer Topping arrived. Appellant ran because there was a warrant outstanding for him, because he had absconded from a detention furlough program.

Appellant also presented expert testimony to the effect that cross-racial identifications made under stress are not as reliable as identifications under other circumstances.

In rebuttal, the prosecution called Billy Moore, who testified he had loaned appellant's mother $15 and that his aunt, not he, lived at 21st and

Harrington. Appellant had seen him there and probably thought he lived there.

II.

DISCUSSION

A.-D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

E. *Imposition of Multiple Enhancements*

 Appellant's final contention is that the court was precluded by *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23] from imposing both a gun use enhancement for the robbery count, pursuant to section 12022.5, subdivision (a), and an enhancement on the attempted murder count for causing great bodily injury by shooting at an occupied motor vehicle, pursuant to section 12022.5, subdivision (b)(1). In *Culbreth* the Supreme Court held that "if all the charged offenses are incident to one objective and effectively comprise an indivisible transaction, then section 12022.5 may be invoked only once and not in accordance with the number of victims." (17 Cal.3d at pp. 333-334.) *Culbreth* was overruled in *People* v. *King* (1993) 5 Cal.4th 59, 79 [19 Cal.Rptr.2d 233, 851 P.2d 27], but still applies to offenses committed before *King* became final, such as those involved here. (*Id.* at p. 80.)

The *Culbreth* rule has been applied to enhancements based on a defendant's being armed with a firearm under section 12022 as well as to use enhancements under section 12022.5. (See *People* v. *Freeman* (1979) 95 Cal.App.3d 917, 924-925 [157 Cal.Rptr. 454]; *People* v. *Robinson* (1977) 66 Cal.App.3d 624, 629-630 [136 Cal.Rptr. 127].) In *People* v. *Jordan* (1984) 155 Cal.App.3d 769, 786 [203 Cal.Rptr. 172], we applied the rule in a case involving both armed and use enhancements. (See also *People* v. *Nguyen* (1988) 204 Cal.App.3d 181, 194 [251 Cal.Rptr. 40].) We are aware of no decision, however, which discusses the issue here—whether *Culbreth* prohibits the imposition of one enhancement for gun use under section 12022.5, subdivision (a), and a second enhancement for great bodily injury under section 12022.5, subdivision (b)(1). When *Culbreth* was decided, subdivision (b) of section 12022.5 had not been enacted. The court rendered its decision

---

*See footnote, *ante*, page 367.

in the context of multiple firearm *use* enhancements based on shooting more than one victim in the same incident. In a later case, *People* v. *Cardenas* (1982) 31 Cal.3d 897 [184 Cal.Rptr. 165, 647 P.2d 569], the defendant was convicted of attempted robbery and attempted murder. The sentence on each offense was enhanced by a finding of firearm use under section 12022.5. The attempted robbery term also was enhanced by a finding of infliction of great bodily injury under section 12022.7. The court held *Culbreth* prohibited more than one use enhancement. (*People* v. *Cardenas, supra,* 31 Cal.3d at p. 914). However, it did not discuss whether it prohibited enhancements for both firearm use and great bodily injury, apparently because the defendant did not raise the issue.

While, as stated, we have found no authority directly on point, *People* v. *Alvarez* (1992) 9 Cal.App.4th 121 [11 Cal.Rptr.2d 463] is instructive by analogy. In *Alvarez*, the defendant was convicted of two counts of attempted murder for firing three shots from a pickup truck, striking two persons. The court held that, notwithstanding *Culbreth*, the defendant could receive two enhancements pursuant to section 12022.55 for inflicting great bodily injury resulting from the discharge of a firearm from a motor vehicle. The court observed that the *Culbreth* rule "emphasizes the single act of the defendant in using a firearm and reasons that the firearm use enhancement relates to the act of the defendant and not to the result to the victim. A great bodily injury enhancement, on the other hand, is related specifically to the result to the victim. . . . To the extent the defendant intends to, and actually does, inflict great bodily injury on multiple victims, the defendant is more culpable than a defendant who harms only a single victim and, thus, may legitimately be punished for each victim so harmed." (*People* v. *Alvarez, supra,* 9 Cal.App.4th at p. 128.)

*Alvarez* was followed in *People* v. *Williams* (1993) 14 Cal.App.4th 601 [17 Cal.Rptr.2d 583]. In *Williams*, the defendant was convicted of two counts of attempted murder arising from a drive-by shooting. His sentence was enhanced pursuant to section 12022.55 on both counts. Citing *Alvarez*, the court stated that section 12022.5 and section 12022.55 "focus upon fundamentally different conduct." (*People* v. *Williams, supra,* 14 Cal.App.4th at p. 604.) Where section 12022.5 punishes use of a firearm, section 12022.55 punishes the infliction of great bodily injury. Thus, "the enhancement provided by section 12022.55 is not a firearm use enhancement subject to *Culbreth*'s single occasion rule, since the enhancement expressly applies to the actual infliction of great bodily injury rather than to the mere use of a firearm." (14 Cal.App.4th at pp. 604-605.)

The reasoning of the courts in *Alvarez* and *Williams* with respect to section 12022.55 can be applied readily to section 12022.5, subdivision (b)(1). Both

provisions require not only the use of a firearm, but also the infliction of great bodily injury. The section 12022.5, subdivision (b)(1) enhancement, like the section 12022.55 enhancement, therefore "specifically relates to the result to the victim" (*People* v. *Alvarez, supra,* 9 Cal.App.4th at p. 128) and "expressly applies to the actual infliction of great bodily injury rather than to the mere use of a firearm." (*People* v. *Williams, supra,* 14 Cal.App.4th at pp. 604-605.) In contrast, use and armed enhancements, which have been held to be subject to *Culbreth,* relate "to the act of the defendant and not to the result to the victim." (Cf. *Alvarez, supra,* )

Section 12022.5, subdivision (b)(1) and section 12022.55 are similar in other respects as well. Both provisions were enacted in 1987, presumably out of concern about the use of firearms in incidents involving motor vehicles. The stated legislative purpose of section 12022.5, subdivision (b)(1), for instance, is "to make the shooting at motorists on this state's public streets and highways a severely punishable offense and . . . to deter persons from violent actions upon our public streets and highways . . . ." (Stats. 1987, ch. 1159, § 3.) At the time the present offenses were committed, section 12022.5, subdivision (b)(1) and section 12022.55 imposed the same additional punishment—five years. In contrast, section 12022.5, subdivision (a), imposed an additional punishment of three, four or five years.[3]

It is apparent that the Legislature intended the infliction of great bodily injury by shooting from or at a motor vehicle to constitute punishable conduct distinct from the mere use of a gun by itself. Otherwise, there would have been no point in enacting section 12022.5, subdivision (b)(1) and section 12022.55, as section 12022.5 already provided for an enhancement for gun use. By requiring actual infliction of injury, section 12022.5, subdivision (b)(1) and section 12022.55 require criminal conduct, and resulting injury, beyond that required under section 12022.5, subdivision (a). The overall scheme reflects a legislative determination that a violation of either section 12022.5, subdivision (b)(1), or section 12022.55 is inherently different from the usual violation of section 12022.5, subdivision (a). It supports the conclusion that the Legislature intended a violation of section 12022.5, subdivision (b)(1) to be punished separately and in addition to a violation of section 12022.5, subdivision (a) where the violations relate to separate offenses arising from the same course of conduct.

The conclusion that *Culbreth* does not preclude imposition of a separate enhancement under section 12022.5, subdivision (b)(1) also is supported by

---

[3]After the present offenses were committed, both section 12022.5, subdivision (b)(1) and section 12022.55 were amended to provide for additional punishment of five, six or ten years. Section 12022.5, subdivision (a) was amended to provide for additional punishment of three, four or ten years, except in cases of carjacking or attempted carjacking.

the reasoning in *Culbreth* itself. Quoting from a Court of Appeal decision, the Supreme Court observed that the firearm use provision of section 12022.5 " 'envisions a single application of deterrent force for each occasion, hopefully to deter gun use on a future occasion. Where, as here, a single judgment imposes sentences for several crimes committed upon a single occasion, only one finding under section 12022.5 is permissible.' " (*In re Culbreth, supra,* 17 Cal.3d 330, 334, quoting *People* v. *Johnson* (1974) 38 Cal.App.3d 1, 12 [112 Cal.Rptr. 834], disapproved on other grounds in *People* v. *McDonald* (1984) 37 Cal.3d 351, 371 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011].) In contrast, imposition of the additional punishment provided for under section 12022.5, subdivision (b)(1) serves a deterrent purpose distinct from that served by subdivision (a), by deterring the escalation of criminal conduct from mere use of the firearm to actual infliction of injury with it.

That subdivisions (a) and (b)(1) of section 12022.5 operate to serve different deterrent purposes is illustrated by the circumstances of the present case. The enhancement of appellant's sentence under section 12022.5, subdivision (a) was based on his use of the firearm to rob Louie Esparza. Appellant then went beyond the mere use of the firearm to the actual discharge of it, with the resulting injury to Fernando Esparza. Although the discharge of the weapon also constituted a use of it, the court stayed the use enhancement on the attempted murder count and instead imposed the great bodily injury enhancement. In imposing the additional enhancement the court recognized that appellant's conduct was more egregious than if he merely had used the firearm without inflicting injury.

Imposing additional punishment for the infliction of injury is likely to deter criminals from using their weapons to injure their victims, even when the use arises from the same transaction as a use which does not cause injury. We do not think *Culbreth* was intended to prohibit additional punishment where the nature and seriousness of the defendant's conduct escalates from one incident to the next, even assuming the incidents are part of the same "transaction" or "episode" of criminal behavior.

For these reasons, we conclude *Culbreth* does not prohibit the imposition of one enhancement for use of a firearm under section 12022.5, subdivision (a) and a second enhancement for the infliction of great bodily injury under section 12022.5, subdivision (b)(1). Unlike the situation in *Culbreth,* the conduct on which the multiple enhancements in this case were based was fundamentally different, as the great bodily injury enhancement punished the resulting harm to the victim and not just the use of the firearm. Accordingly, even if the separate offenses charged here were part of an indivisible transaction, the multiple enhancements were proper.

### III.

### DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and McKinster, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 13, 1996.