Filed 5/26/21  P. v. Entezari CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090624 |
| Plaintiff and Respondent, | (Super. Ct. No. 17FE016333) |
| v. | |
| IMAN MAHIN ENTEZARI, | |
| Defendant and Appellant. | |

After a jury found defendant Iman Mahin Entezari guilty of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)),[1] and found true certain enhancement allegations, the trial court imposed a sentence of 19 years in state prison. On appeal, defendant contends the trial court abused its sentencing discretion.  We affirm.

---

[1] Further undesignated statutory references are to the Penal Code.

BACKGROUND

*Douglas Wright*

On August 31, 2017, in a Sacramento parking lot, defendant bought a multi-device home theater system (including a projector and a screen) from Douglas Wright, a self-employed salesman. The two men, who did not know each other before the transaction, agreed on a price of $500.

Wright gave his name and cell phone number to defendant. As he was walking back to his own vehicle after placing the purchased equipment in defendant's car, Wright "got a ding on [his] phone, and it was a picture of [Wright] and the back of [his] van," including the license plate, "stating that 'they better work,' " apparently referring to the equipment Wright just sold to defendant.

In light of that communication, Wright "was worried about having to talk to [defendant] again," so Wright "blocked" defendant's phone number the first time defendant called him.

The next day, defendant appeared in his car at the end of the driveway to Wright's home, called out Wright's name, and pointed a gun at him out of the driver's window. While pointing the gun at Wright, defendant said, "Can I get my money back now?" Wright replied: "[Y]es. Give me a second to get it." Wright turned around to retrieve money inside his house, and defendant shot him near the spine.

Wright testified that as a result of the gunshot to his back, he did "not feel 60 percent on [his] right leg." He suffered nonstop "leg spasms." He could walk, but he could not run. And "[t]he nerve pain" was constant.

*Defendant*

Defendant testified that when he got home after buying the home theater system from Wright, he realized he bought "a dummy display. It was just [a] beautiful display, but there was no actual electronic component."

2

Defendant thought Wright "made a mistake," and called Wright, who didn't answer. Defendant left a voice message asking Wright to call him back. Wright didn't call.

The next day, an acquaintance told defendant that he had been "scammed." Defendant returned to the parking lot where he met Wright, but did not find him there. Defendant ultimately located what he thought was Wright's company's address and drove there, hoping to "solve the issue" and exchange what he purchased for a functioning system. In defendant's trunk was a firearm he purchased legally in 2015, which he had been keeping in his trunk for at least a month.

Defendant saw Wright and at least one other person "unloading the stuff" out of a van, stopped his car in front of Wright's home (pointing in the opposite direction of traffic, with the driver's side closest to the driveway), stepped out of his car, and went to the trunk "to take out the boxes" containing the theater system. As defendant took a box out of the trunk, he said: "Hey, what's up, Doug? I brought this stuff back." Noting Wright looked "shocked," defendant explained that the equipment he bought was "not working. I think you made a mistake."

Wright—looking "very angry"—replied, "What the fuck are you doing here? How did you find me?" Defendant replied: "[C]alm down, my friend. I came in peace. I just want to exchange the product." Wright responded, "Get the fuck out of here." Defendant told Wright to "[j]ust give [him] [his] money . . . or . . . a functioning" home theater system, and he would leave.

Wright told defendant to leave as he walked slowly towards him, holding a box cutter in his hand, and pointing it at defendant. This was "very scar[y]" for defendant because he was hospitalized in 2009 after somebody attacked him with a box cutter knife.

Given Wright's "very angry and threatening" demeanor, defendant stopped unloading the boxes from his car and reached for his firearm in the trunk. He took the gun out of the trunk and was holding it in his hand but concealing it from Wright's view.

3

Defendant began moving toward the driver's seat as Wright turned away from defendant, moved back up the driveway of his home, and said something to a colleague.

Defendant threatened to call 911 if Wright did not return defendant's money. Wright said: "[G]et the fuck out of here, dude. I'm going to . . . pop your ass."

Defendant, sitting in the driver's seat, saw Wright bend down and begin to remove something from the back of his van that looked like the handle of a shotgun. Wright was facing his van, and defendant was "scared to death," as he was one "hundred percent sure it was a shotgun," and his father was killed in a shooting when defendant was a teenager.

Defendant pointed his firearm at the ground and shot twice to scare Wright, so that defendant could "get some time to move [his] car to get out," as "cars [were] coming" down the street. Given the position of his car, defendant was holding the gun in the "wrong hand," his left hand, when he fired. Defendant testified he believed his conduct saved his life.

*Verdict and Sentencing*

In September 2019, a jury found defendant not guilty of attempted murder (§§ 664/187) and the lesser included offense of attempted voluntary manslaughter (§§ 664/192, subd. (a)), but guilty of assault with a semiautomatic firearm (§ 245, subd. (b)). In connection with the offense, the jury found true the allegations that (i) defendant personally used a firearm (§ 12022.5, subd. (a)) and (ii) personally inflicted great bodily injury (GBI) upon Wright (§ 12022.7, subd. (a)).

At the beginning of an October 2019 sentencing hearing, the trial court noted that it received the presentencing probation report and defendant's sentencing brief. The prosecutor asked the trial court to "impose the maximum possible term of 22 years in state prison," and defense counsel argued the "low term [was] justified based on the" crime-free life defendant had lived "except for that day" of his offense.

The trial court observed that "[p]robation recommend[ed] low term, three years" for the assault, "[l]ow term on the gun, three years, and the imposition of three years for

4

the great bodily injury.  [¶]  A nine-year state prison sentence." "I am not going to give you that," the trial court said.

The trial court explained that it was "debating whether it should be middle term or upper term" for the firearm enhancement, and solicited defense counsel's thoughts, adding:  "It's one thing to possess a weapon, which is a violation of 12022.5, but the [c]ourt is able, as a trier of fact would, in assessing an assault, to look at the circumstances and the conduct surrounding that assault, and considering the fact that he discharged the firearm causing great bodily injury, leads me to believe it should be for sure a middle term, not a low, but maybe an upper term in light of the consequences."

Defense counsel argued "it should be middle term . . . because there [was] a lot of mitigation . . . but finding upper term" was "[un]warranted based on [defendant's] history."

After the prosecutor argued for an upper term gun enhancement, the trial court said it was "struggle[ing] with it," but "leaning towards upper term."

Defense counsel asked the trial court "to reconsider.  I don't think it's warranted considering everything that we know happened . . . ."

The trial court decided to impose the upper term of 10 years for the firearm enhancement "because of the circumstances surrounding th[e] assault."  With six years (the middle term) for the assault, and three years for the GBI enhancement, that lead to an aggregate sentence of 19 years.

The trial court explained:  "The crime did involve great violence.  [¶]  Great bodily harm.  [¶]  And other acts disclosing a high degree of cruelty, viciousness, or callousness. [¶]  It was totally out of line under the circumstances of the case.  [¶]  You, because of that, have engaged in violent conduct, which makes you a danger to society.  [¶]  I have weighed that versus your mitigation:  [¶]  No criminal history.  [¶]  Productive life.  [¶] Tried to do something with your life."

Defendant timely appealed.

5

DISCUSSION

Defendant argues the trial court abused its sentencing discretion when it chose the upper term on the firearm enhancement, because it relied on "improper factors in aggravation" and "dismissed substantial factors in mitigation." Specifically, defendant argues the trial court: (1) "violated the dual use prohibition as set forth in [California rules of Court, r]ule 4.20(c) and section 1170[, subdivision ](b)" by relying on a "fact charged and found as an enhancement (the great bodily injury inflicted upon Wright) as a reason for imposing the upper term on the firearm enhancement without striking the punishment for the great bodily injury enhancement"; (2) "relied on reasons that . . . apply to all persons convicted of violations of the same offense and enhancements . . . that do not indicate why [defendant's] conduct deserve[d] harsher punishment than that of any other"; and (3) "did not give full consideration" to six factors in mitigation.

The People argue defendant forfeited his claim by failing to raise it in the trial court, and that on the merits, the trial court did not err.

Defendant responds that if we determine his claim is "forfeited by counsel's failure to properly object to . . . dual use of Wright's injury, counsel was deficient," and we should review the claim through the lens of ineffective assistance of counsel.

We conclude defendant's claim is forfeited on appeal, and he has not demonstrated ineffective assistance of counsel.

A trial court's sentencing decision is reviewed for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*Ibid.*) A defendant bears the burden of affirmatively establishing an abuse of discretion. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.) Absent that showing, we presume the trial court acted

to achieve legitimate sentencing objectives and uphold its decision to impose a particular sentence.  (*Ibid*.)

The trial court may rely on any aggravating circumstances reasonably related to its sentencing decision.  (Cal. Rules of Court, rule 4.420(b); *People v. Sandoval, supra*, 41 Cal.4th at p. 848.)  The court may base an upper term sentence upon any aggravating circumstances it deems significant (*Sandoval*, at p. 848), and a single aggravating factor suffices for imposition of an upper term for an enhancement.  (*People v. Osband* (1996) 13 Cal.4th 622, 732; *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413.)

"A defendant, or his or her counsel, must object at the time of sentencing if the trial court does not state any reasons or a sufficient number of reasons for a sentencing choice or double-counts a particular sentencing factor, and, if there is no objection, any error . . . can not be challenged for the first time on appeal."  (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1371, citing *People v. Scott* (1994) 9 Cal.4th 331.)

## I

Here, defendant has forfeited his claim by failing to object at sentencing. Although defense counsel argued that the upper term for the firearm enhancement was not warranted because of defendant's history and numerous other mitigating factors, this is not an objection to dual use.  Thus, the claim is forfeited on appeal.  (See *People v. Scott, supra*, 9 Cal.4th at p. 355 [defendant's claim that reasons used for sentencing were "inapplicable, duplicative, and improperly weighed" was forfeited]; *People v. De Soto* (1997) 54 Cal.App.4th 1, 7-8 [improper dual use of facts underlying weapons used to impose the upper term forfeited by failure to interpose specific objection at sentencing].)

Due to defendant's ineffective assistance of counsel contention, we address the merits of his claim below.

## II

Section 1170, subdivision (b), and California Rules of Court, rule 4.420(c), prohibit the use of any fact both to enhance a sentence and to impose the upper term.

7

(See *People v. Jackson* (1987) 196 Cal.App.3d 380, 388, disapproved on other grounds in *People v. Rodriguez* (1990) 51 Cal.3d 437, 444-445, fn. 3.)

Here, the trial court (a) imposed the middle term for the assault, (b) used Wright's injury to impose the three-year GBI enhancement, as found true by the jury, and (c) considered the "circumstances surrounding th[e] assault," including that, because he *discharged* his firearm, defendant did more than simply "use" it within the meaning of section 12022.5, subdivision (a). This was not "dual use."

Though the trial court also referenced Wright's injury when discussing the firearm enhancement, given the standard of review and defendant's burden, the trial court's observation that defendant's discharge of the weapon was conduct beyond that necessary for the enhancement, suffices for imposition of an upper term. (See *People v. Castorena* (1996) 51 Cal.App.4th 558, 562 ["where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence"]; *People v. Douglas* (1995) 36 Cal.App.4th 1681, 1691 [affirming imposition of an upper term firearm use enhancement, as "[t]he evidence show[ed] circumstances beyond that which was necessary for finding use of the gun"]; cf. *People v. Davis* (1995) 41 Cal.App.4th 367, 373 [because § 12022.5 punishes use of a firearm per se, and does *not* specifically concern the result on a victim of such use, a separate punishment for infliction of GBI accomplishes a different legislative concern].)

Because there was no error, there was no deficiency in counsel's performance in failing to object. Accordingly, defendant's claim of ineffective assistance of counsel fails.

### III

Our analysis rejecting defendant's "dual use" argument resolves defendant's forfeited argument that the trial court did not indicate why defendant's conduct "deserve[d] harsher punishment than" that of any other person convicted of violations of

8

the same offense and enhancements: defendant's use of the firearm went beyond that necessary for the enhancement.

                                        IV

Defendant's final argument is that sentencing error occurred because the trial court "did not give full consideration" to six factors in mitigation.

This forfeited argument also fails on the merits. The trial court reviewed and considered the probation report, defendant's sentencing brief, the prosecution's argument at the hearing for a maximum possible term of 22 years, and defendant's arguments at the hearing opposing an upper term for the firearm enhancements. It explicitly considered multiple aggravating and mitigating circumstances, and concluded imposition of the middle term for the assault (six years), the upper term for the firearm enhancement (10 years), and the three-year GBI enhancement—for an aggregate sentence of 19 years— was proper. The court was not obliged to mention the six mitigating circumstances defendant highlights on appeal. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583; *People v. Salazar* (1983) 144 Cal.App.3d 799, 813.)

                                  DISPOSITION

The judgment is affirmed.


                                              /s/
                                        RAYE, P. J.



We concur:


    /s/
BLEASE, J.


    /s/
HOCH, J.


                                        9